**[ORAL ARGUMENT NOT SCHEDULED]**

**No. 22-1269**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————

GEOFFREY ORLANDI,

Petitioner,

v.

BILLY NOLEN, Acting Administrator,
Federal Aviation Administration,

Respondent.

———————————

On Petition for Review of an Order of the Federal Aviation Administration

———————————

**BRIEF FOR RESPONDENT**

———————————

BRIAN M. BOYNTON
*Principal Deputy Assistant
Attorney General*

ABBY C. WRIGHT
BEN LEWIS
*Attorneys, Appellate Staff
Civil Division, Room 7250
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 514-2494*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A.     Parties and Amici

Geoffrey Orlandi appeared in proceedings before the Federal Aviation Administration.  Geoffrey Orlandi is the petitioner and Billy Nolen, acting administrator for the Federal Aviation Administration, is the respondent in proceedings before this Court.  There are no intervenors or amici.

### B.     Rulings Under Review

The petition before this Court reviews a final order from the Federal Aviation Administration upholding the termination of Geoffrey Orlandi as a designated pilot examiner.  That order was issued on August 22, 2022, and appears at page 3 of the Joint Appendix.

### C.     Related Cases

There are no related cases.

*/s/ Ben Lewis*
Ben Lewis

# TABLE OF CONTENTS

**Page**

GLOSSARY

STATEMENT OF JURISDICTION ................................................................. 1

STATEMENT OF THE ISSUES ..................................................................... 1

PERTINENT STATUTES AND REGULATIONS ......................................... 2

STATEMENT OF THE CASE ......................................................................... 2

      A.    Legal Background ...................................................................... 2

      B.    Factual Background ................................................................... 5

SUMMARY OF ARGUMENT ....................................................................... 9

STANDARD OF REVIEW ........................................................................... 13

ARGUMENT ................................................................................................. 14

I.     The FAA followed required procedures when it terminated petitioner as a designated pilot examiner. ....................................... 14

II.    Petitioner's challenges to his termination process fail. .................... 18

III.   Petitioner's substantive challenges to the merits of the FAA's decision to rescind his designation are unreviewable and, in any event, meritless. ................................................................................ 29

CONCLUSION ............................................................................................. 37

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                                                  **Page(s)**

*Accardi v. Shaughnessy*,
  347 U.S. 260 (1954)................................................................... 14

*American Farm Lines v. Black Ball Freight Serv.*,
  397 U.S. 532 (1970) ................................................................... 14

*Barrie v. FAA*,
  16 F. App'x 930 (10th Cir. 2001) .............................................20

*Bradshaw v. FAA*,
  8 F.4th 1215 (11th Cir. 2021) ..................................................30

*Brock v. Cathedral Bluffs Shale Oil Co.*,
  796 F.2d 533 (D.C. Cir. 1986)............................................ 21, 22

*Burdue v. FAA*,
  774 F.3d 1076 (6th Cir. 2014)..............................................31, 32

*Common Cause v. Federal Election Comm'n*,
  906 F.2d 705 (D.C. Cir. 1990) .......................................... 28-29

*Drake v. FAA*,
  291 F.3d 59 (D.C. Cir. 2002) ....................................................32

*Fizer v. FAA*,
  708 F. App'x 696 (D.C. Cir. 2017) .............................. 29, 30, 31

*Fried v. Hinson*,
  78 F.3d 688 (D.C. Cir. 1996) ....................................................24

*Greenwood v. FAA*,
  28 F.3d 971 (9th Cir. 1994)....................................................... 31

*Lopez v. FAA*,
  318 F.3d 242 (D.C. Cir. 2003),
  *as amended* (Feb. 11, 2003) ..............................10, 13, 14, 19, 30

*Morris v. Sullivan*,
    897 F.2d 553 (D.C. Cir. 1990) ................................................... 26

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ................................................................. 12

*National Small Shipments Traffic Conf., Inc. v. Interstate Commerce Comm'n*,
    725 F.2d 1442 (D.C. Cir. 1984) ................................................ 26

*Padula v. Webster*,
    822 F.2d 97 (D.C. Cir. 1987)............................................... 21, 22

*Sheble v. Huerta*,
    755 F.3d 954 (D.C. Cir. 2014).........................2, 10, 14, 27, 30, 31

*Steenholdt v. FAA*,
    314 F.3d 633 (D.C. Cir. 2003) ........... 9-10, 10, 13, 14, 21, 24, 29, 30, 31, 32

*United States v. Chemical Found.*,
    272 U.S. 1 (1926) ................................................................. 26

*Vitarelli v. Seaton*,
    359 U.S. 535 (1959) .............................................................. 13

*Wallaesa v. FAA*,
    824 F.3d 1071 (D.C. Cir. 2016) ............................................... 19

*Xcel Energy Servs. Inc. v. Federal Energy Regulatory Comm'n*,
    41 F.4th 548 (D.C. Cir. 2022)............................................. 12, 28

**Statutes:**

5 U.S.C. § 701(a)(2) ..................................................................29

49 U.S.C. § 44702(d)(1)(A)............................................................2

49 U.S.C. § 44702(d)(2) ............................................... 1, 3, 29, 31

49 U.S.C. § 44703(a) ...................................................................2

49 U.S.C. § 46110 .................................................................................. 9

49 U.S.C. § 46110(a) ............................................................................. 1

49 U.S.C. § 46110(d) ........................................................................... 19

**Regulations:**

14 C.F.R. § 183.11(b) ............................................................................ 3

14 C.F.R. § 183.15 ................................................................................ 29

14 C.F.R. § 183.15(b)(6) ........................................................................ 3

14 C.F.R. § 183.23 ................................................................................ 2

**Other Authorities:**

FAA, Order 8000.95A, *Designee Management Policy*
  (Dec. 7, 2020) .......................................................... 3, 19, 20, 36

FAA, Order 8000.95B, *Designee Management Policy*
  (Apr. 12, 2022) ........... 2, 3, 4, 5, 9, 10, 15, 17, 18, 22, 24, 25, 26, 27, 28, 36

FAA, Order 8900.1, *Flight Standards Information Management System*
  (change 418 Aug. 26, 2015) .............................. 5, 7, 8, 8-9, 9, 15, 33, 34, 35

# GLOSSARY

| | |
|---|---|
| FAA | Federal Aviation Administration |
| JA | Joint Appendix |

## STATEMENT OF JURISDICTION

The Federal Aviation Administration (FAA) rescinded petitioner's designation on July 8, 2022, *see* Joint Appendix (JA) 19, and issued a final decision upholding that decision on August 22, 2022, *see* JA 3.  Petitioner timely petitioned for review on October 20, 2022.  *See* JA 1-2.  This Court has jurisdiction to adjudicate petitions for review of final decisions of the FAA under 49 U.S.C. § 46110(a).

## STATEMENT OF THE ISSUES

The FAA delegates the examination of prospective pilots to designated pilot examiners.  The FAA may rescind an examiner's designation "at any time for any reason the Administrator considers appropriate," 49 U.S.C. § 44702(d)(2), so long as it follows the procedures set forth in its internal guidelines.  When the FAA rescinds an examiner's designation for cause, its internal guidelines direct it to document its decision with the specific reason for the decision.  If an examiner seeks administrative review of that decision, an appeal panel of the FAA is directed to review the file, document deliberations, and document outcomes.  The FAA rescinded petitioner's examiner designation for cause and denied his administrative appeal.  The issues presented are the following:

1.  Whether the FAA followed the applicable procedures in its internal guidelines when it terminated petitioner's designation for cause and denied his appeal and whether any deviation prejudiced petitioner.

2.  Whether this Court may entertain petitioner's challenges to the substance of FAA's termination decision.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.   Legal Background

The Federal Aviation Act authorizes the administrator of the Federal Aviation Administration (FAA) to issue pilot certificates to qualified individuals, 49 U.S.C. § 44703(a), "akin to a driver's license for pilots," *Sheble v. Huerta*, 755 F.3d 954, 955 (D.C. Cir. 2014).  Pursuant to the Act, the FAA "delegate[s] . . . the examination, testing, and inspection necessary to issue" such certificates to "qualified private person[s]," 49 U.S.C. § 44702(d)(1)(A), called designated pilot examiners, 14 C.F.R. § 183.23.

These examiners "are selected, appointed, and trained to serve the needs of the FAA in fulfilling its safety mission."  FAA, Order 8000.95B, *Designee Management Policy*, vol. 1, ch. 9, ¶ 4 (Apr. 12, 2022) (FAA Order 8000.95B); JA 122.  They are appointed only if "there is a need for one" by

an official from the FAA—in general, the head of a Flight Standards District Office.  14 C.F.R. § 183.11(b).  During their service, designated pilot examiners are supervised by an official called a managing specialist to ensure that they "perform[] to the standards and expectations set forth by the FAA."  FAA, Order 8000.95A, *Designee Management Policy* vol. 1, ch. 6, ¶ 2 (Dec. 7, 2020) (FAA Order 8000.95A); JA 133.  Designated pilot examiners receive regular communications from the FAA through a web-based tool called the designee management system.  *See* FAA Order 8000.95B, vol. 1, ch. 9 ¶ 4a; JA 122.  In general, designated pilot examiners "allow[] the FAA to leverage its resources" and ensure that qualified pilot candidates are able to obtain certificates.  FAA Order 8000.95B, vol. 1, ch. 9 ¶ 4; JA 122.

Accordingly, the FAA "may rescind a delegation . . . at any time for any reason the Administrator considers appropriate."  49 U.S.C. § 44702(d)(2); *see* 14 C.F.R. § 183.15(b)(6).  The FAA's internal guidelines state that rescinding a designation may be "for cause" or "not for cause."  FAA Order 8000.95B, vol. 1, ch. 9, ¶ 4(c); JA 122.  A designation may be rescinded "for cause" for "[m]isconduct" or "[i]nability to work constructively with the FAA," for example.  FAA Order 8000.95B, vol. 1, ch. 9, ¶ 4(c)(1); JA 123.  A decision "not for cause" may occur when the FAA

3

"can support the certification work or need with other existing designees."
FAA Order 8000.95B, vol. 1, ch. 9, ¶ 4(c)(2); JA 123.  An examiner whose
designation has been terminated for cause "cannot reapply for
designation."  FAA Order 8000.95B, vol. 1, ch. 9, ¶ 4(c); JA 122.

FAA guidelines set forth the procedures governing the decision to
terminate a designation.  To process a termination, the FAA "must
document termination decisions" in the designee management system with
"the specific reason(s) for the termination."  FAA Order 8000.95B, vol. 1,
ch. 9 ¶ 4(a); JA 122.

A designee may appeal a termination for cause for "a review of the
termination for cause process."  FAA Order 8000.95B, vol. 1, ch. 11, ¶ 2b;
JA 127.  In response to an appeal request, the FAA convenes an appeal
panel of FAA officials who were not involved in the original decision.  FAA
Order 8000.95B, vol. 1, ch. 11, ¶ 3(b); JA 127.  The panel may "[u]phold the
original termination decision whereby the original decision stands and no
further appeals are accepted," or it may "[o]verturn the termination
decision whereby the FAA reinstates the designee."  FAA Order 8000.95B,
vol. 1, ch. 11, ¶ 2(c); JA 127.  The guidelines direct the panel to "[r]eview the
appealing designee file stored in [the designee management system],"
request "additional information or clarification," and "[d]ocument

deliberations and outcomes in [the designee management system]." FAA

Order 8000.95B, vol. 1, ch. 11, ¶ 4; JA 127-128.

### B.    Factual Background

**1.** Petitioner Geoffrey Orlandi served as a designated pilot examiner

for the FAA. *See* JA 26. Among other things, this work entailed

"administer[ing] a certification test" for prospective pilots. FAA, Order

8000.1, *Flight Standards Information Management System* vol. 5, ch. 2, §

1, ¶ 5-216 (change 418 Aug. 26, 2015) (FAA Order 8900.1); JA 105. To get a

certificate, an applicant must "demonstrate eligibility to take the test." FAA

Order 8900.1, vol. 5, ch. 2, § 1, ¶ 5-218; JA 105-106. He must then pass a

"practical test" with "oral questioning" on the ground and a "check ride" in

the air. FAA Order 8900.1, vol. 5, ch. 2, § 1, ¶ 5-219; JA 106-117. The

examiner determines eligibility, does a ground test, and does a flight test.

The conduct at issue in this case concerns what fees a designated pilot

examiner may charge prospective pilots. FAA guidelines direct an

examiner to "collect the fee and advise the applicant that the test has

begun" only "[o]nce eligibility is determined." FAA Order 8900.1, vol. 5,

ch. 2 § 5-220. As petitioner acknowledges, when he conducted an

examination, he had a different "fee practice involving ineligible

applicants." JA 7. At "the commencement of the [p]retest [b]riefing,"

before determining eligibility, petitioner collected a non-refundable fee for the entire examination.  JA 33.  This fee included the cost of the ground test and the flight test.  *Id.*  If he determined that an applicant was not eligible for the test, and so did not conduct a ground test or a flight test, he nonetheless retained the entire fee.  *Id.*; *see* Pet'r. Br. 4-5.

The FAA received a hotline complaint in 2022 that petitioner "took [a] student's money for a check-ride that was never initiated" because he "disqualified" the applicant as ineligible."  JA 26.   In a follow-up conversation, the complainant alleged that petitioner first "collected the check" for the examination and then "use[d] a checklist" on eligibility requirements to disqualify the student as ineligible.  JA 30.

The FAA suspended petitioner as a designated pilot examiner and initiated an investigation into his conduct.  *See* JA 22-23.  Investigators reported that petitioner acknowledged in conversations over the phone that he "does not determine [the] eligibility of an applicant until he meets them in person and AFTER he collects full payment for the checkride."  JA 21.  Petitioner also sent investigators his standard confirmation email, which reflected that he collected a non-refundable fee for the entire examination at "the commencement of [p]retest [b]riefing."  JA 33.  Investigators later spoke with a witness who confirmed that petitioner once charged hundreds

of dollars for a check ride, found the applicant ineligible, and left with the fee. *Id.*

In further conversations with petitioner, investigators explained to petitioner that "charging a full checkride fee to an individual who is not eligible . . . was seen as unfair." JA 20. It also proposed "determining eligibility for an airman prior to [collecting the fee at] the checkride." *Id.* In those conversations, investigators reported that petitioner "was argumentative with regards to his actions that led to the complaint and also was unreceptive" to these proposed solutions. *Id.* Investigators further reported that petitioner "stated that his fiscal practices are in part, in place to punish" applicants who arrive without adequate proof of eligibility. *Id.*

**2.** The FAA rescinded petitioner's designation for cause. *See* JA 18. The agency informed petitioner through the designee management system that his designation was being revoked for "[m]isconduct" and "[i]nability to work constructively with [the] FAA or public." JA 17. It explained that petitioner committed misconduct because he "was found to have collected fees from applicants prior to determining eligibility." JA 18. This practice contravened FAA Order 8900.1, vol. 5, ch. 2, § 1, ¶ 5-220, the agency explained, which directs an examiner to "collect the fee and advise the applicant that the test has begun" only "[o]nce eligibility is determined," JA

118.  The agency also reasoned that petitioner "charg[ed] applicants full checkride fees when no service had been provided," so petitioner "was not following prescribed procedures for gain."  JA 18.

The FAA separately concluded that petitioner had shown an "inability to work constructively with the FAA" because "during several hours worth of phone calls . . . he was argumentative and unreceptive to what the FAA suggested."  JA 18.  The FAA reported that petitioner "exhibited an uncooperative attitude" and stated that his policy was "in place to teach a lesson to the flight instructors of the applicants."  *Id.*

**3.**  Petitioner filed an administrative appeal.  He argued that he did not violate FAA guidelines because FAA Order 8900.1, vol. 5, ch. 2, § 5-219 states that a "plan of action" for a test "may be devised in any sequence deemed appropriate."  JA 7 (quotation marks omitted).  He also noted that he was "directly observed . . . and [his plan of action] was provided to the inspector," but he was never "informed that [his] sequence was inappropriate."  *Id.*  Against the claim that he was difficult to work with, petitioner asserted that he just offered his "defense, reasons, and justification for the fee practice" in conversations with investigators.  *Id.*  He argued that he could not do "the eligibility determination work prior to the date of the practical test" because that would violate FAA Order 8900.1,

8

vol. 5, ch. 2, § 1, ¶ 5-220, which he read to say that "the eligibility determination occurs on the day of the test and only after ten other [p]re-[t]est briefing items have been addressed." *Id.*

The appeal panel upheld the termination decision. The panel, made up of three officials at the FAA without any connection to the proceedings, reviewed petitioner's file in the designee management system. *See* Doc. 30. It then conducted "a review of the termination for cause process." FAA Order 8000.95B, vol. 1, ch. 11 ¶ 2(b); JA 127. After review, the panel informed petitioner that "[b]ased on a review of your termination for cause, the appeal panel was unable to find any justification to overturn the termination of your designation." JA 4. It therefore "upheld the original decision" to terminate petitioner's designation. *Id.*

Petitioner sought review in this Court under 49 U.S.C. § 46110. *See* JA 1.

## SUMMARY OF ARGUMENT

**I.** The FAA followed its procedures in terminating petitioner's designation for cause and adjudicating his administrative appeal. The substance of the FAA's decision to rescind a pilot examiner designation is not reviewed on the merits because that decision is committed to agency discretion by law. *See Steenholdt v. FAA*, 314

9

F.3d 633, 638-40 (D.C. Cir. 2003). Instead, this Court assesses the agency's compliance with its own "procedural rules that limit otherwise discretionary actions." *Id.* at 639. To prevail, petitioner must show that the FAA fell "substantially short" of applicable procedural requirements "resulting in prejudice" to petitioner. *Sheble v. Huerta*, 755 F.3d 954, 957 (D.C. Cir. 2014) (quoting *Lopez v. FAA*, 318 F.3d 242, 248 (D.C. Cir. 2003), *as amended* (Feb. 11, 2003)).

The FAA followed its procedural guidelines when it terminated petitioner for cause. Because the FAA may terminate a designee for any reason that it considers appropriate, it need only give "specific reason(s) for the termination." FAA Order 8000.95B, vol. 1, ch. 9, ¶ 4(a), (b)(1); JA 122. In petitioner's termination notice, the FAA plainly stated that petitioner's designation was rescinded because (i) he committed misconduct when he collected examination fees prior to determining eligibility and kept those fees from ineligible applicants, and (ii) he demonstrated an inability to work constructively with the FAA when he refused alternatives to this policy.

The FAA also substantially complied with its appellate process when it adjudicated petitioner's administrative appeal. Consistent with agency

procedure, the agency established a panel of three people who were not involved in petitioner's original termination decision. *See* Doc. 30. That panel reviewed petitioner's file and issued a decision within 45 days that "upheld the original decision to terminate [petitioner's] designation." JA 3.

**II.** Petitioner fails to point to any procedural defect that might justify a remand.

With respect to the FAA's investigation and subsequent decision to rescind his designation, petitioner argues that the FAA violated its guidelines by inadequately monitoring his alleged misconduct during the period where he served as a designated pilot examiner. But that contention does not advance his cause: petitioner does not identify any alleged procedural error, nor are the monitoring guidelines designed to protect designated pilot examiners. With respect to the investigation itself, petitioner asserts that he never received a promised meeting with investigators, but the FAA's guidelines do not require such a meeting, investigators did not make a promise to petitioner, any promise would not bind the agency, and petitioner fails to explain how the lack of meeting prejudiced him. Petitioner also protests that the FAA terminated his designation for a reason different from the one that prompted the FAA's investigation, but there is no rule that agency rationales cannot shift during

an investigation (indeed, the point of an investigation is to uncover what has happened) so long as the agency provides notice of the reasons for the decision.  In any event, the FAA's concerns did not materially change from investigation to decision.

Petitioner likewise fails to allege any procedural defect during his administrative appeal that might warrant a remand.  Petitioner primarily speculates that the appeal panel did not review his file or meaningfully consider his arguments.  The presumption of regularity forecloses such challenges, and the record belies them, in any event.  The panel reviewed petitioner's file, and although it did not document deliberations, it adopted the original termination decision, so "the agency's path may reasonably be discerned." *Xcel Energy Servs. Inc. v. Federal Energy Regulatory Comm'n*, 41 F.4th 548, 557 (D.C. Cir. 2022) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  Nothing more was required.

**III.**  Petitioner's substantive challenge to his termination decision is unreviewable, and in any event, meritless.  Under this Court's settled precedent, the substance of the FAA's determination to rescind a discretionary delegation is not subject to review. Petitioner offers no reason to depart from this settled rule.

12

Even were this Court to consider the substance of the agency's decision, it would be upheld. The agency reasonably concluded that petitioner committed misconduct because he collected fees from applicants before determining eligibility and kept those fees, even from ineligible applicants, in violation of FAA guidelines. And the conclusion that petitioner could not work constructively with the FAA was also reasonable and supported by the record. Investigators reported from multiple conversations with petitioner over the phone that he was argumentative and unreceptive to the FAA's suggestions. As designees are an extension of the FAA and a reflection on the agency, such conduct may justify revocation of the delegation of FAA's authority.

## STANDARD OF REVIEW

On a petition from a final order from the FAA terminating a designation, this Court does not review the substantive merits of the termination decision because that decision is committed to agency discretion by law. *See Steenholdt v. FAA*, 314 F.3d 633, 638-40 (D.C. Cir. 2003). In reviewing a procedural challenge, the Court asks whether the agency "fell substantially short" of the applicable procedures and whether noncompliance "result[ed] in prejudice." *Lopez*, 318 F.3d at 248 (quoting *Vitarelli v. Seaton*, 359 U.S. 535, 545 (1959)).

## ARGUMENT

## I.   The FAA followed required procedures when it terminated petitioner as a designated pilot examiner.

As this Court has explained, FAA decisions regarding its delegated authority are not subject to review on the merits.  *Sheble v. Huerta*, 755 F.3d 954, 957 (D.C. Cir. 2014); *infra* 29-33.  Because the substance of the termination decision is committed to agency discretion, when reviewing a challenge to that decision, the Court looks only to the agency's own "procedural rules that limit otherwise discretionary actions."  *Steenholdt v. FAA*, 314 F.3d 633, 639 (D.C. Cir. 2003) (citing *Accardi v. Shaughnessy*, 347 U.S. 260 (1954)).  A petitioner must identify binding rules "intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion."  *Lopez v. FAA*, 318 F.3d 242, 247 (D.C. Cir. 2003) (quoting *American Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538 (1970)), *as amended* (Feb. 11, 2003).  And to prevail, he must show "that the FAA 'fell substantially short' of the applicable procedural requirements, 'resulting in prejudice to him.'"  *Sheble*, 755 F.3d at 957 (quoting *Lopez*, 318 F.3d at 248).

**A.**  In terminating petitioner's designation for cause, the agency followed all applicable guidelines.  Because the agency may terminate a designee for any reason that it considers appropriate, FAA Order

14

8000.95B, vol. 1, ch. 9, ¶ 4(c); JAA 122-124; *see also* 14 C.F.R. § 183.15;

*Steenholdt*, 314 F.3d at 638, its guidelines only require it to give a designee

the "specific reason(s) for the termination," FAA Order 8000.95B, vol. 1,

ch. 9, ¶¶ 4(a), 4(b)(1); JAA 122 ("Termination decisions must be formally

documented in [the designee management system], to include the specific

reason.").

The FAA provided petitioner with the specific reasons for its decision

to terminate petitioner's status as a designated pilot examiner.  As

explained, petitioner had a practice of collecting the entire fee for a pilot

examination before determining eligibility and refused to refund any part of

that fee if the candidate turned out to be ineligible for the flight test.  JA 33.

In petitioner's termination notice, the FAA stated that petitioner committed

"[m]isconduct" when he collected examination fees "prior to determining

eligibility," and kept those fees even when he did not have to perform a

flight test because he found an applicant ineligible.  JA 18.  It explained that

his practice was "contrary to guidance," specifically, FAA Order 8900.1, vol.

5, ch. 2, § 1, ¶ 5-220.  That guidance directs an examiner to "collect the fee

and advise the applicant that the test has begun" only "[o]nce eligibility is

determined."  *Id.*; *see* JA 118.  As a further rationale, the FAA emphasized

for petitioner that it was generally improper to charge ineligible applicants "full checkride fees when no service had been provided."  JA 18.

In addition, the FAA stated that petitioner had shown an "inability to work constructively with the FAA" because "during several hours worth of phone calls . . . he was argumentative and unreceptive to what the FAA suggested."  JA 18.  As explained, it reported that he "exhibited an uncooperative attitude" and that he stated that his policy was "in place to teach a lesson to the flight instructors of the applicants."  *Id.*

That the FAA provided "specific reasons" for its decision is confirmed by petitioner's contemporaneous understanding of the reasons for his termination, as reflected in his filings during administrative proceedings. Before the agency, petitioner summarized that he was terminated for misconduct because he "utilized a fee practice involving ineligible applicants," noting that the FAA relied on ¶ 5-220 of FAA Order 8900.1 to proscribe "collect[ing] fees from applicants prior to determining eligibility." JA 7 (quotation marks omitted).  Petitioner also understood that he was terminated because he would not take the FAA's directions with respect to alternatives to the policy.  In his administrative appeal, he described how he rejected the FAA's recommendation that he "utilize email and virtual means to determine eligibility prior to the day of the checkride."  *Id.*

(quotation marks omitted).  Since petitioner received the specific reasons for his termination, the FAA appropriately processed his termination.

**B.**  The FAA likewise followed applicable procedures when it denied petitioner's administrative appeal.  FAA guidelines permit a designee terminated for cause to appeal for a "review of the termination for cause process."  FAA Order 8000.95B, vol. 1, ch. 11, ¶ 2(b); JA 127.  If a designee appeals, the FAA must establish an appeal panel that "consist[s] of two or three individuals[] . . . who were not involved in the original decision."  FAA Order 8000.95B, vol. 1, ch. 11, ¶ 3(b); JA 127.  The panel must then "complete the appeal process within 45 calendar-days of receiving the appeal request."  FAA Order 8000.95B, vol. 1, ch. 11, ¶ 2(d); JA 127.  The panel is directed to "complete[] the following tasks": "[r]eview the appealing designee file stored in [the designee management system]"; "[c]ontact the managing specialist, evaluation panel lead, appointing official, and/or selecting official for additional information or clarification"; and "[d]ocument deliberations and outcomes in [the designee management system]."  FAA Order 8000.95B, vol. 1, ch. 11, ¶ 4; JA 127-128.  It may "[u]phold the original termination decision whereby the original decision stands and no further appeals are accepted" or "[o]verturn the termination

17

decision whereby the FAA reinstates the designee." FAA Order 8000.95B, vol. 1, ch. 11, ¶ 2(c); JA 127.

The FAA substantially complied with these procedures. When petitioner appealed, the agency established a panel of three individuals who were not involved in his original termination decision. *See* Doc. 30. The panel reviewed petitioner's file to resolve the appeal. *See id.* Within 45 days, the panel issued a decision. *See* JA 3. That decision, properly documented in the designee management system, "upheld the original decision to terminate [petitioner's] designation." *Id.*

## II.   Petitioner's challenges to his termination process fail.

**A.** Before this Court, petitioner does not identify any alleged procedural deficiency in the FAA's termination notice itself. Instead, he alleges scattershot procedural deficiencies by the agency during the investigation into his conduct before his termination: that the FAA failed to monitor him appropriately; promised him an in-person meeting that never came to pass; and changed its termination rationale throughout.

**1.** As an initial matter, petitioner did not assert that the FAA violated any procedural guidelines on these grounds during his administrative appeal. Before the agency, petitioner argued only that the agency failed to give him "specific reasons" for his termination and that the agency's

grounds were not "legitimate." *See* JA 7 (citing FAA Order 8000.95A, vol. 1, ch. 9, ¶ 4(a), (b)(1)). Accordingly, the Court may not consider other belated objections regarding other alleged procedural deficiencies. *See* 49 U.S.C. § 46110(d); *Wallaesa v. FAA*, 824 F.3d 1071, 1077-78 (D.C. Cir. 2016) (declining to consider new issues that *pro se* party did not present to agency).

**2.** Regardless, petitioner's objections fail on their own terms. Petitioner argues (at 57) that the FAA's termination decision should be remanded because the FAA violated its guidelines by inadequately monitoring his alleged misconduct during his time serving as a designated pilot examiner. That challenge fails because it does not identify any FAA guideline affecting petitioner's rights. A procedural challenge from a designee can succeed only where the FAA violates procedures "aimed at protecting the [designee] from the Administrator's otherwise unlimited discretion." *Lopez*, 318 F.3d at 247-48.

The FAA's oversight guidelines assign to FAA managing specialists the responsibility to supervise designated pilot examiners. For example, managing specialists assess "compliance with regulatory requirements, guidance, policy requirements, and safe operating practices." FAA Order 8000.95A, vol. 1, ch. 6 ¶ 2(b)(3); JA 133. That supervision is only intended

to "promote safety" and "ensure that the designee performs to the standards and expectations set forth by the FAA."  FAA Order 8000.95A, vol. 1., ch. 6, ¶ 2(a); JA 133.  It does not give rights to designated pilot examiners who have gone unsupervised.  *Cf. Barrie v. FAA*, 16 F. App'x 930, 934 (10th Cir. 2001) (unpublished order) (denying procedural claim from aircraft operator where procedures did not "exist to protect the rights of aircraft operators").

In any event, petitioner has not stated a violation of any applicable FAA guideline on monitoring designees.  Petitioner alleges (at 58) that his managing specialists "review[ed] his plan of action" and "watch[ed] him implement his plan of action," but "failed to note that [he] was conducting his pre-test briefing in an impermissible order."  The failure to independently identify misconduct in a particular instance does not, without more, contravene the FAA's oversight guidelines.  *See generally* FAA Order 8000.95A, vol. 1, ch. 6; JA 133-139.  That is especially the case here, where it is not apparent that FAA managing specialists ever observed petitioner's fee policy for ineligible applicants in action.  Petitioner was terminated because he collected examination fees prior to determining eligibility and kept the fees for the check ride even when he did not conduct one.  *See* JA 18.  But petitioner never asserts that his supervisors observed

him find an applicant ineligible.  There is therefore no reason to think that the managing specialists witnessed him retain an examination fee from an applicant who did not receive an examination.

**3.**  With respect to the investigation itself, petitioner argues (at 46) that a remand is necessary because he never received a meeting in person or via video.  In arguing that the FAA deviated from its procedures, petitioner does not argue that any regulations or guidelines obligated the agency to give him a meeting in person or by video.  Rather, he seizes on statements in emails from investigators expressing plans to arrange a meeting over Zoom.  This argument cannot provide a basis for remand; is based on a misreading of the FAA's statements; and identifies no prejudice.

Petitioner cannot bring a procedural challenge based on statements from investigators because such representations do not establish "binding" procedures that the FAA "was required strictly to observe." *Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 539 (D.C. Cir. 1986).  The agency's "procedural rules that limit otherwise discretionary actions," *Steenholdt*, 314 F.3d at 639, are found in preexisting "rules" or "internal guidelines," as those sources contain the "voluntarily adopted, binding policies that limit its discretion," *Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987).  There is no basis to conclude that the FAA intended for

21

individual statements from line investigators in emails to designees to bind the agency to follow procedures outside of its guidelines and rules.  That is all the more true here, where the statement was expressed during an investigation, where the agency traditionally retains significant "enforcement discretion."  *See Brock*, 796 F.2d at 538.  Because FAA guidelines do not require a meeting in person or by video, *see generally* FAA Order 8000.95B, vol. 1, ch. 10, petitioner's challenge fails.

In any event, investigators did not commit to a meeting in person or by video.  In response to a request from petitioner, investigators stated that they would "contact [him] mid next week to arrange a Zoom meeting for possibly the following week."  JA 74.  That statement is hardly binding itself.  *See Padula*, 822 F.2d at 100.  Indeed, the statement was "prospective," contingent, and "impose[d] no significant restraints" on the agency.  *Id.*  Investigators made clear that the meeting still needed to be "arrange[d]" and only remained a "possib[ility]."  JA 74.  And there is no question that investigators subsequently changed any plan to arrange a meeting with petitioner.  When petitioner followed up, investigators stated that "[t]he investigation into the complaint is still ongoing, [and] we will contact you to discuss once the investigation is complete."  JA 85.

22

Nor did petitioner suffer any prejudice when investigators decided not to meet with him.  He had the opportunity to speak with investigators for hours over multiple conversations by phone, *see* JA 17, 20-21, and he exchanged emails with investigators for months, *see, e.g.*, JA 74-104, so he had ample opportunity to share his views.  Petitioner asserts (at 47) only that his points were not coming across in writing.  But this ignores the communication by phone, and there is no basis to conclude that a video meeting would fare better.

**4.**  Similarly failing to advance his case, petitioner argues (at 50) that a remand is necessary because the FAA terminated his designation for a reason that was different from the one that prompted his investigation.  He was investigated, he contends, "for fee practices that did not reflect positively on the Administrator" but was terminated for "not follow[ing] prescribed procedures regarding the order of taking fees for gain."  Pet'r Br. 50-52.  To state these rationales is to demonstrate that they are not materially different: they express the same basic concern with petitioner's fee policy for ineligible applicants.  Specifically, the FAA was troubled that petitioner was collecting fees from applicants "prior to determining eligibility" and keeping fees when he found applicants ineligible, even

23

where he "charg[ed] applicants full checkride fees" but did not conduct a check ride.  JA 18.

Regardless, the FAA's rules do not require it to terminate a designation based only on the reasons that prompted an investigation.  It is well settled that "nothing in the FAA's rules precludes [a m]anager from basing [a renewal] determination on reasons not stated in the original proposal of nonrenewal." *Steenholdt*, 314 F.3d at 640; *see also Fried v. Hinson*, 78 F.3d 688, 691 (D.C. Cir. 1996) ("Nothing in the rules precludes the regional director from basing his determination on reasons not described in the original proposal for non-renewal[] . . . .").  The same is true for the FAA's decision to rescind a pilot examiner designation.  Whatever prompted the investigation, what matters is that petitioner ultimately received "specific reason(s) for the termination."  FAA Order 8000.95B, vol. 1, ch. 9, ¶ 4(a); JA 122.

Petitioner's contrary understanding must be rejected.  Petitioner's theory would lead to the untenable result that if an investigation uncovered additional or different wrongdoing during an investigation, the agency would be unable to terminate a pilot examiner designation based on that wrongdoing.  Instead, the FAA takes the sensible approach of investigating

complaints, establishing the relevant facts, and then issuing a decision based on those facts.

**B.** Beyond the purported deficiencies in the agency's investigation into his conduct and subsequent termination decision, petitioner argues (at 53-57) that a remand is necessary because the administrative appeal panel violated various procedures governing his appeal. In doing so, petitioner speculates that the panel did not review his file, deliberate on his appeal, or meaningfully consider his arguments. But the appeal panel reviews only "the termination for cause *process*" on appeal, not the substance of the FAA's decision. FAA Order 8000.95B, vol. 1, ch. 11, ¶ 2(b) (emphasis added); JA 127. And none of petitioner's challenges to that review withstand scrutiny.

**1.** Although petitioner suggests (at 54) that his administrative appeal panel "did not consider [his] entire designee file from the Designee Management System" in resolving his appeal, the record reflects that the panel reviewed his file. *See* Doc. 30 (checking "yes" when asked "Has the Panel reviewed the appealing Applicant/Designee's record?"); JA 4 (basing denial "on a review of [petitioner's] termination for cause"). And the record includes all the documents relevant to the "review of the termination for cause process" on appeal, including those necessary to resolve petitioner's

claim that he did not receive proper notice of the reasons his designation was terminated. FAA Order 8000.95B, vol. 1, ch. 11, ¶ 2(b); JA 7. Petitioner provides no grounds to support his unadorned speculation that the panel did not, in fact, examine all relevant materials in the designee management system, other than his disagreement with the outcome.

Any such speculation would, moreover, go against the "presumption of regularity" that attaches to agency actions. *United States v. Chemical Found.*, 272 U.S. 1, 14-15 (1926). That "strong presumption of regularity in administrative proceedings" forecloses "procedural challenges that members of [a] body inadequately considered the issues before reaching a final decision," *National Small Shipments Traffic Conf., Inc. v. Interstate Commerce Comm'n*, 725 F.2d 1442, 1450 (D.C. Cir. 1984), or failed to consider relevant evidence, *Morris v. Sullivan*, 897 F.2d 553, 560 (D.C. Cir. 1990) (rejecting assertion that an administrative law judge did not review submitted evidence).

**2.** Petitioner argues (at 54) that the panel did not make a "record of deliberations," but that does not advance his case. The relevant guideline includes the direction to "[d]ocument deliberations" alongside a direction to "[c]ontact" certain officials "for additional information and clarification," thereby making clear that the procedures are sensitive to the context of the

termination review.  *See* FAA Order 8000.95B, vol. 1, ch. 11, ¶ 4(c); JA 128.
And although petitioner is correct that the panel did not upload into the
designee management system an attachment documenting its
deliberations, *see* Doc. 30, that choice was entirely appropriate here, where
the agency affirmed by summary disposition, and the agency did not need
to give further guidance to the officials whose decision was under review.
The decision not to document deliberations, in a case where those
deliberations had no independent consequence, is not the kind of
substantial noncompliance with a procedural requirement that warrants a
remand.  *See Sheble*, 755 F.3d at 957.

        In any event, the agency's choice not to document its deliberations
did not prejudice petitioner.  Petitioner received a notice informing him of
the outcome of those deliberations: that the panel "[u]pheld the original
decision to terminate [his] designation" because it was "unable to find any
justification to overturn the termination of [his] designation."  JA 4.  That
outcome would remain the same whether the panel transcribed discussions
or not.

        Petitioner asserts (at 57) that not documenting deliberations
prevented him from "provid[ing] direct evidence of the panel's failure to
consider the entire record as required."  As explained, however, the panel

considered his record. *See* Doc. 30. And again, FAA guidelines require only that the appeal panel "document deliberations." FAA Order 8000.95B, ch. 11 ¶ 4c. Petitioner fails to explain how documentation showing that there were deliberations would shed light on his claims about the record.

**3.** Throughout, petitioner suggests in passing (at 54) that the appeals process was "hollow" because the appeal panel issued a "summary conclusion." But petitioner identifies no FAA guideline requiring greater explanation, foreclosing any procedural challenge on such grounds. And even if petitioner had instead developed a challenge to the adequacy of the agency's explanation under the APA, *but see infra* 29-33, the agency's explanation here was sufficient under ordinary principles of administrative law. Petitioner argued to the appeal panel that the FAA failed to provide adequate notice of the reasons for the termination and that the FAA lacked legitimate reasons for its decision. *See* JA 7. The appeal panel explained that there was no "justification to overturn the termination of [petitioner's] designation," and in doing so, adopted the very "decision to terminate petitioner's designation" that petitioner acknowledges included the agency's reasoning. *See* JA 4; Pet'r Br 16-19, 29-44. As "the agency's path may reasonably be discerned," a remand is not necessary. *Xcel Energy Servs. Inc. v. FERC*, 41 F.4th 548, 557 (D.C. Cir. 2022); *see Common Cause*

*v. Fed. Election Comm'n*, 906 F.2d 705, 706 (D.C. Cir. 1990) (per curiam) (equating agency decision with brief where agency "adopted the reasoning" of the brief).

### III. Petitioner's substantive challenges to the merits of the FAA's decision to rescind his designation are unreviewable and, in any event, meritless.

Petitioner raises a number of challenges in his brief that go the merits of the FAA's decision to rescind his pilot examiner designation. But the FAA's decision is committed to agency discretion by law, so no review of the merits of that decision may be had in this Court. Even considered on their own terms, petitioner's contentions must be rejected.

**A.1.** FAA termination decisions do not receive merits review. The FAA's governing statute provides that it "may rescind a delegation . . . at any time for any reason the Administrator considers appropriate," 49 U.S.C. § 44702(d)(2), and FAA regulations likewise provide that a designation may be terminated "[f]or any reason the Administrator considers appropriate." 14 C.F.R. § 183.15. "[T]his language commits the substantive termination decision to agency discretion by law," *Fizer v. FAA*, 708 F. App'x 696, 697 (D.C. Cir. 2017) (citing 5 U.S.C. § 701(a)(2)), because it places "no constraints on the Administrator's discretion," *Steenholdt*, 314 F.3d at 639. "For any decision made by the Administrator, there will

29

always be substantial evidence that the decision was made 'at any time for any reason.'" *Id.* Accordingly, this Court does not "review the substantive merits of an FAA termination decision." *Sheble*, 755 F.3d at 957.

That is the approach that this Court has taken for two decades in cases involving all manner of termination and all kinds of substantive challenges. In *Steenholdt*, this Court held unreviewable the merits of the FAA's decision not to renew a designated engineering representative where a petitioner brought a substantial-evidence challenge. 314 F.3d at 634. In *Lopez*, this Court confirmed that it would not review the FAA's renewal decisions "on substantive grounds" even when a petitioner framed those challenges as about whether a decision was "arbitrary and capricious" or "an abuse of process." 318 F.3d at 246. In *Sheble*, this Court recognized that rule while reviewing the termination of a designated pilot examiner. 755 F.3d at 957. And in *Fizer*, though unpublished, this Court treated as settled law the conclusion that it would not review the FAA's substantive merits of FAA's decision to rescind the designation of a designated pilot examiner. 708 F. App'x at 697.

The conclusion that the substance of an FAA termination decision is unreviewable on the merits is uniformly shared by the courts of appeals. *See, e.g.*, *Bradshaw v. FAA*, 8 F.4th 1215, 1221-22 (11th Cir. 2021)

30

(explaining that a court may not "review the substance of the FAA's decision to terminate because[] . . . the FAA's discretionary termination decision is unreviewable"); *Burdue v. FAA*, 774 F.3d 1076, 1082 (6th Cir. 2014) (explaining that substantive review of a termination decision "would not only be improper, but it would also be futile"); *see also Greenwood v. FAA*, 28 F.3d 971, 974-75 (9th Cir. 1994) (explaining that the court of appeals may not "review the merits of an FAA decision to suspend or not to renew" a designation).

**2.**  Petitioner offers no good reason to depart from that rule here. Petitioner asserts (at 28) that prior cases concerned only whether a designee could claim a "constitutional violation[]" or challenge a "decision not to renew [a] designation," but that is incorrect; they also concerned whether a designee could bring administrative challenges, *Steenholdt*, 314 F.3d at 639, and challenges to decisions to terminate designated pilot examiners, *see Sheble*, 755 F.3d at 957; *Fizer*, 708 F. App'x at 697.  The reasoning of such cases plainly bars substantive review of the FAA's decision here, as the FAA relies on the same discretionary authority to rescind a designation as it does when it decides not to renew a designee. *See 49* U.S.C. § 44702(d)(2) (providing that the FAA may revoke a delegation "at any time for any reason" for any designee).

31

Failing to persuade, petitioner also argues (at 28) that this Court should review the substantive merits of the termination decision in this case because petitioner "was not terminated for 'any reason;' he was terminated 'for cause' for a specific reason."  But "any reason" includes all reasons.  *See Burdue*, 774 F.3d at 1082 ("The fact that Burdue's designation was terminated 'for cause[]' . . . is irrelevant.").

In a final attempt to avoid the bar on substantive merits review, petitioner suggests (at 30) that a court may still review the FAA's factual determinations underlying its termination decisions for "substantial evidence."  This Court has rejected that argument, explaining that "there will always be substantial evidence that the decision was made 'at any time for any reason,'" which is the relevant question.  *Steenholdt*, 314 F.3d at 639.  To conclude otherwise would mean that "no agency action could ever be committed to agency discretion by law," because all agencies rely on the facts before them.  *Id.*; *see also Drake v. FAA*, 291 F.3d 59, 71 (D.C. Cir. 2002) (holding challenge to "specific findings" to be unreviewable because "the statute at issue gives virtually unfettered discretion to the FAA").  Such principles apply with particularly strong force in this case, where part of the FAA's decision involved the agency-specific determination about how well a designee can work constructively with the FAA.  *See* JA 18.  Congress has

32

left such agency-specific determinations and discretionary decisions to the FAA.

**B.**  Even assuming this Court were to consider petitioner's substantive arguments, those arguments fail. Petitioner challenges his termination decision on the grounds that the FAA was wrong to conclude that petitioner (i) committed misconduct and (ii) demonstrated an inability to work constructively with the FAA.  But each determination was reasonable.

**1.**  The FAA reasonably concluded that petitioner committed misconduct.  As the agency referenced in petitioner's termination notice, FAA Order 8900.1, vol. 5, ch. 2, § 1, ¶ 5-220 directs an examiner to "collect the fee and advise the applicant that the test has begun" only "[o]nce eligibility is determined."  JA 118.  Petitioner told investigators that he collected a fee for the entire examination before determining eligibility, *see* JA 21, and that the fee was non-refundable even if the applicant turned out to be ineligible, *see* JA 33.  Accordingly, petitioner violated guidelines to his own gain.

In response, petitioner emphasizes (at 32) that FAA guidelines elsewhere state that a designee's protocol "may be devised in any sequence deemed appropriate."  FAA Order 8900.1, vol. 5, ch. 2, § 1, ¶ 5-219; JA 106.

But this statement refers to the order of different portions of the examination itself—not fees.  The guidelines provide: "There is no formal division between the oral portion and the flight portion of the practical test.  However, the majority of oral questioning occurs during the ground portion of the test.  The plan of action may be devised in any sequence deemed appropriate by the evaluator."  FAA Order 8900.1, vol. 5, ch. 2, § 1, ¶ 5-219; JA 106.  This guidance does not concern fees or eligibility—just the order of the test once it has begun.

The FAA also reasonably concluded that petitioner committed misconduct because he specifically "charg[ed] applicants full checkride fees when no service had been provided."  JA 18.  Petitioner acknowledges in this Court that he collected payment of the fee before reviewing whether an applicant met eligibility requirements, and if they did not, "the full fee for the scheduled checkride was retained as a cancellation fee."  Pet'r. Br. 4-5.  As investigators explained to petitioner in multiple conversations, "charging a full checkride fee to an individual who is not eligible . . . was seen as unfair" because they did not receive a check ride.  JA 20.

**2.**  The conclusion that petitioner demonstrated an inability to work constructively with the FAA was also a reasonable one.  From multiple conversations with petitioner over the phone, investigators reported that

petitioner was "argumentative with regards to his actions that led to the complaint." JA 20. They also reported that he stated that his policy was "in place to teach a lesson to the flight instructors of the applicants." JA 18. This conduct alone reasonably justifies the termination of a designee.

But petitioner also would not work with the FAA to find a way to determine the eligibility of applicants before charging a fee. Investigators reported petitioner was unreceptive to the FAA's "notion that determining eligibility for an airman prior to the checkride is effective," JA 20, and otherwise "unreceptive to what the FAA suggested," JA 18. As designees function as an extension of the FAA, such conduct may give rise to the rescission of a pilot examiner designation.

Petitioner posits (at 42) that he could not accept the FAA's suggestion to determine the eligibility of applicants in advance because FAA guidelines require examiners to determine eligibility as part of the pre-test briefing for the examination. FAA Order 8900.1, vol. 5, ch. 2, § 1, ¶ 5-220; JA 117-119. At most, that guideline requires an eligibility determination on the day of the test; it does not prohibit an examiner from reviewing eligibility materials and working to resolve eligibility concerns before an examination. And it has no bearing on the agency-specific determination about whether

the FAA thinks that it can work constructively with petitioner to develop solutions.

Nor can petitioner succeed on a substantive challenge to the appeal panel's decision. The FAA's internal guidelines only provide for "a review of the termination for cause process." FAA Order 8000.95B, vol. 1, ch. 11 ¶ 2(b); JA 127. Petitioner presented only two arguments to the appeal panel that his termination process violated applicable guidelines. He argued that the FAA did not include the "specific reasons" for his termination, JA 7 (citing FAA Order 8000.95A, vol. 1, ch. 9, ¶ 4(a), (b)(1)), and that the reasons offered were not "legitimate" to terminate him for cause, *id.* (citing FAA Order 8000.95A, vol. 1, ch. 9, ¶ 4(c)). These arguments cannot succeed; as petitioner acknowledged, his termination notice plainly included the reasons for his termination—namely, that he committed misconduct and demonstrated an inability to work constructively with the FAA. *See* JA 18. Both qualify as reasons to terminate a designee for cause. *See* JA 123. Accordingly, the panel correctly "upheld the original decision to terminate" him. JA 3; *see* FAA Order 8000.95B, vol. 1, ch. 11 ¶ 2(c); JA 127.

36

## CONCLUSION

For the foregoing reasons, the petition for review should be denied.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

ABBY C. WRIGHT

 */s/ Ben Lewis*
BEN LEWIS
*Attorneys, Appellate Staff*
*Civil Division, Room 7250*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-2494*
*benjamin.r.lewis@usdoj.gov*

June 2023

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7646 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Georgia 14-point font, a proportionally spaced typeface.

_/s/ Ben Lewis_
Ben Lewis

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.

 */s/ Ben Lewis*
Ben Lewis

**ADDENDUM**

# TABLE OF CONTENTS

49 U.S.C. § 44702 ........................................................................... A1

14 C.F.R. § 183.15 .......................................................................... A2

**49 U.S.C. § 44702**

**§ 44702. Issuance of certificates**

**(a) General authority and applications.**--The Administrator of the Federal Aviation Administration may issue airman certificates, design organization certificates, type certificates, production certificates, airworthiness certificates, air carrier operating certificates, airport operating certificates, air agency certificates, and air navigation facility certificates under this chapter. An application for a certificate must--

**(1)** be under oath when the Administrator requires; and

**(2)** be in the form, contain information, and be filed and served in the way the Administrator prescribes.

\* \* \*

**(d) Delegation.—**

**(1)** Subject to regulations, supervision, and review the Administrator may prescribe, the Administrator may delegate to a qualified private person, or to an employee under the supervision of that person, a matter related to—

**(A)** the examination, testing, and inspection necessary to issue a certificate under this chapter; and

**(B)** issuing the certificate.

**(2)** The Administrator may rescind a delegation under this subsection at any time for any reason the Administrator considers appropriate.

\* \* \*

A1

**14 C.F.R. § 183.15**

**§ 183.15. Duration of certificates**

(a) Unless sooner terminated under paragraph (b) of this section, a designation as an Aviation Medical Examiner or as a Flight Standards or Aircraft Certification Service Designated Representative as described in §§ 183.21, 183.23, 183.25, 183.27, 183.29, 183.31, or 183.33 is effective until the expiration date shown on the document granting the authorization.

(b) A designation made under this subpart terminates:

(1) Upon the written request of the representative;

(2) Upon the written request of the employer in any case in which the recommendation of the employer is required for the designation;

(3) Upon the representative being separated from the employment of the employer who recommended him or her for certification;

(4) Upon a finding by the Administrator that the representative has not properly performed his or her duties under the designation;

(5) Upon the assistance of the representative being no longer needed by the Administrator; or

(6) For any reason the Administrator considers appropriate.